### FOWLER, et v LUND, et

Ohio Appeals, 9th Dist, Lorain Co
No 554. Decided May 8, 1931

Glitsch & Stack, Lorain, for Fowler, et.
Baird and Vandemark, Elyria, for Lund.
Fauver & Fauver, Elyria, for Defendants Hallie C. Sharp, Effee G. Sharp Walker, Geo. C. Sharp, Baxter C. Sharp, Margaret Mahala Sharp Hill, Wm. G. Sharp, Annabel Sharp, Margaretha Bohnert, Nellie Sharp, Martha Barney Clough, Margaret B. Clough, and H. H. Nye, Admr.

PARDEE, PJ.

So, the trial court had complete jurisdiction of the subject-matter of the litigation and of all the parties interested therein.

In the Court of Common Pleas, the prayer of the Sharp heirs was granted and $10,000 was ordered paid to them out of the proceeds resulting from the sale of said real estate; and the Burrell heirs being dissatisfied with said judgment, have appealed to this court.

In the brief filed by the attorneys for the Burrell heirs the questions presented are tersely stated as follows:

"The only question before the court, raised by the cross-petitions, is whether or not payments made by the executrix to plaintiffs as beneficiaries under the will of Elbert J. Burrell can be deducted from the proceeds of the sale, it now appearing that there is not sufficient personal estate remaining to pay all of the heirs a like sum.

"It is clear that if the claim of the Sharp heirs is not such as would be a sufficient basis for an independent suit to recover the payments in question, then the mere fact that there is property of these plaintiffs in court can not help the situation. It is likewise clear that there has been no judicial determination that these plaintiffs are indebted to defendants and that the plaintiffs have had no day in court on that question, for such an issue is not raised by the cross-petitions.

"* * * *

"From the letters and receipts attached to the agreed statement of facts as 'defendants' exhibits,' it appears clearly that the payments made by Mahala Burrell, executrix, were made by her as executrix of

the estate of Elbert J. Burrell, voluntarily, without any solicitation from plaintiffs, and were not secured by plaintiffs through any artifice or representation on their part. Payments so voluntarily made can not be recovered.

"* * * *

"It is clear that these payments were not made under any misapprehension as to the facts. The executrix had before her all of the essential facts in the matter. There was no mistake as to any fact existing at the time the payments were made. The only mistake in the whole transaction was in the executrix assuming that there would be at her death a fund remaining sufficient to make a like payment to the other heirs. Certainly, this was no mistake of fact. The truth is, that the executrix was mistaken as to her legal rights and duties as such executrix. For such a mistake of law, there can be no recovery in any event.

"* * * *

"It is clear that an independent cause of action could not have been maintained to recover payments more than six years after the payments were made. If no such action could have been maintained because of the running of the statute, a set-off can not be had in equity for the same claim."

In addition, the Burrell heirs claim that the agreed statement of facts does not show that the money used to make the payments to them came from the corpus of Elbert J. Burrell's estate; but with this contention we do not agree, as it appears from said statement that the executrix received substantially $10,000 in cash as corpus of said estate, and the evidence clearly shows that at the times the several distributions were made she was making a distribution of the corpus and that the recipients were receiving it as such—so it is now too late for them to question that fact. The evidence also shows that no advance distributions were made to the Sharp heirs.

The evidence further shows that, at the time the distributions were made, it was agreed by and between the Burrell heirs and the executrix who made the partial distribution before the time she was authorized to do so under said will, that said heirs would receive the money at the times of payment and that it should be taken into account upon final distribution and settlement of the estate. Of course, if there were sufficient assets of a personal character of a value equal to or more than $10,000, no one would question the right of the Sharp heirs to have $10,000 paid to them before any further sum should be paid to the Bur-

rell heirs; but because the only assets left are the avails of the real estate sold in this action and the title thereto went directly to the devisees instead of to the executrix, claim is made that, upon principle, a different situation is created which requires a different rule of law.

If the representative of the estate who made the advance distributions had been one who did not have the life use of said property and the distributions had been made upon the facts as disclosed by the agreed statement, he would have been entitled to bring and maintain a suit in equity for the amounts so paid; and there being an express agreement in this case, possibly he could have maintained an action at law. Under the facts admitted in this case, the cause of action did not accrue until the death of the life tenant, which was on October 30, 1927; so the cause of action was not barred by any of the statutes of limitation of this state, if any one of them applied.

In this suit, upon the issues made, all parties were properly before the trial court, and no objection was made to the form of the action made upon the answers and the replies thereto, and the Court of Common Pleas being one of general jurisdiction, had the right, as a matter of law, to make all orders which could properly be made upon the issues.

The separate answers of the administrator and of the Sharp heirs did not state causes of action at law, but ones in equity for an adjustment upon the facts therein alleged, so that the Burrell heirs who received the advance payments upon their shares as given them under the residuary clause of said will should not receive more out of said estate than the others who were entitled to receive the same, but no more. The trial court probably would have been justified, upon the evidence, in entering a decree in favor of the administrator for the amounts so advanced; and that court having jurisdiction of the real estate which went to the Burrell heirs by the same clause of the will which gave them their interest in the personal estate, it would have been proper for that court to have ordered the amount of the advancements paid to him for proper distribution to the ones entitled to receive it.

By items two and three of said will it appears that the testator intended to treat his real and personal property as forming one whole, without distinguishing the one from the other, and that any division made between said heirs should be based upon

that theory; and the fact that the title to the personal estate vested in the executrix and the title to the real estate vested in the devisees, does not nullify the intention of the testator to treat his estate as one whole or prevent a court of equity from carrying out such intention, in a suit in which the court has jurisdiction of the subject-matter of the litigation and acquires jurisdiction of the parties.

Further, when the payments were made to the Burrell heirs, they and the executrix treated the estate given to the Burrell and the Sharp heirs as a blending of the realty and personalty in the residuary clause of the will; and from the letters of the executrix in making the advance distributions and the receipts given by the Burrell heirs and all of the circumstances, the natural inference arises that it was the intention of all of them that the Sharp heirs were not to be prejudiced by such advance distributions, and that if it became necessary in order to equalize the distribution in carrying out the terms of the will, the real estate should be used for that purpose.

It would be manifestly unjust and inequitable to permit one to receive advance distributions from an estate upon the theory that the same could be made without prejudice to the rights of others who have equal rights in the estate, and then when the value of the property has depreciated before the time for final settlement has arrived, not to take into consideration the advance distributions in making final settlement of the property of those entitled to receive it.

Our conclusion is that the trial court had, and that this court has, complete and adequate jurisdiction to settle all questions raised by the pleadings in this case; that in the proceedings in this court a determination may be properly made as to the amounts due the legatees and devisees, and that the same may be paid directly to them, as was decreed by the trial court; that an adjustment and an equalization should be made as ordered by the trial court; and that no statute of limitations has run which prevents the same from being done.

See the following cases for the principles which underlie the proper determination of the instant case:

Keever v Hunter, 62 Oh St, 616.

Hammond v Cronkright (N. J. Eq.), 20 Atl. 847.

Bidwell v Beckwith (Conn.), 85 Atl. 682.

Von Lingen v Field (Md.), 141 Atl. 390.

McClung v Sieg (W. Va.), 46 S. E. 210.

Clifton v Clifton (Fla.), 45 So. 458.

Smith v Smith, 76 Ind. 236.

A decree may be drawn in accordance with this opinion, and the interest which may accrue upon the money impounded is ordered paid to the Sharp heirs.

WASHBURN, J, and FUNK, J, concur.